Next case on our docket this morning is Lawrence v. Hawaii Air National Guard. Mr. Rudin. Good morning, Your Honor, and members of the court. We believe this is a clear case of racial discrimination in the Hawaii Air National Guard. Mr. Lawrence was the first African American officer commissioned and hired full time by the Air National Guard. And we asked the court to look closely at the allegations which caused him to be terminated. Number one, the allegations do not have anything to do with his performance actually on the job at the Hawaii Air National Guard. The allegations that were raised against him concerned an allegation of adultery when he was in the Army several years before. And the Army conducted its own investigation of that and found that the charges were unsubstantiated and cleared Captain Lawrence. The government's brief, I hate to say but must say, is replete with certain misstatements or misconceptions. For instance, they accuse Captain Lawrence of improper fraternization. Fraternization in the military is an improper relationship that's too close between a superior officer and a subordinate officer. The allegation in this particular case was of an affair between two captains, one female, one male. It's arguably an adultery situation in the military, which the Army did not find. But it's not fraternization because they were both captains and nobody was an inferior and nobody was passing upon the clearance of another. Counsel, I have a question about the procedural aspect of your client's Title VII claim. And that is the question whether Captain Lawrence exhausted all of the remedies provided by the military before filing litigation. And as I understand it, there's some testimony that he did not or some information in the record that he did not exhaust all of his intramilitary procedures. And what is your response to that argument? Our response is that Captain Lawrence did attempt to exhaust all of his military remedies. He filed objections. He filed grievances. The Hawaii Air National Guard refused to take action and or investigate his complaint of discrimination for a year. This is a case where the Army sat on its hands, refused to investigate for over a year. And then Mr. Lawrence filed his complaint in the court after the Army gave him basically a right to sue letter to do so. Basically stating if you're dissatisfied with our investigation, then you have the right to file a complaint in the district court within 90 days. So it's your position that there was nothing else that he had to do, that he had done everything and got his right to sue letter and that that's the end of it? Yes, Your Honor. Did he file before the EEOC? No. So he didn't exhaust his remedies with respect to the EEOC? Well, arguably there was no remedy with regard to the EEOC because it's arguably a federal matter. I think the state was arguing he should have filed before the Hawaii State Civil Rights Commission. But their letter directed him or at least authorized him to file in the U.S. District Court. Who authorized him to file in the district court? The Hawaii Air National Guard. But you didn't file with either the EEOC or the state equivalent of the EEOC, is that right? True. So whether it was either a federal claim or a state claim, you didn't file with either the federal agency or the state agency? No, but we filed an EEOC complaint within the guard procedure itself. And they refused to act upon that claim. And basically sent us a letter after a year saying basically we've done all we're going to do. If you're dissatisfied, then sue us. And so we did. Let me just ask one more thing. In the Chavez affidavit, Col. Chavez's affidavit, I'm so sorry. In paragraph nine, he states that there never was a right to sue letter issued and no final agency decision occurred. And you're telling us something different than that. And where specifically in the record will we find a right to sue letter that you're talking about? You know, I know I've seen it, but I can't point you to the number right now. I would have to get to the record, but I'm sure it's there and that I have seen it. Okay. The military clearance process, and we've cited the regulation. And it's entitled Exhibit HH to an excerpt of record. And I would just like to read the last paragraph of that Air National Guard legal desk book. It states chapter one, administrative personnel matters. Adverse actions against members with a security clearance. And this is down at the bottom of the page. The proper management of security clearances once granted is so important that after court martial and voluntary separation actions of officers and airmen have been initiated, AF131-501 now requires the appropriate security clearance authority to authorize these actions to further proceed. Civilian removal actions under AF136-704 may not even be initiated until the clearance authority so authorizes. This means that a notice of proposed removal in a civilian action may not be issued until such authorization is given. Our argument is that the procedure was not followed in this case. The fact that the procedure was not followed is an indication that this was a blatant act of discrimination. Moreover, we would point you to exhibit number CC, which is a document, a letter written by Johnny M. Bland, DAFSH Chief Special Security Management Division Directorate of Intelligence. And basically he goes on to state that when an incident occurs or allegations develop concerning an individual's activities and conduct or behavior, or failure to comply with security programs requirements in relation to a security standard criteria set forth in attachment one, the commanders have two options that may be utilized to remove an individual from sensitive compartmental information. SCI access, interim suspension, and suspension. Both should be based upon a thorough review of the facts and should include an assessment of the risk to national security. And interim suspension B, at the top of the next page, allows time to collect pertinent information and decide the individual's SCI access should be suspended. And if a security information file, SFJ, should be established, this action should be completed within 20 days. Basically the regulation requires that the agency notify the individual that action is being taken against him. And it requires that the acting authority, in this case the Hawaii Air National Guard, then refer the matter to the Air Force, because it is the Air Force that initially initiated the clearance, and it's the Air Force that supervises these clearances. So while the Hawaii Air National Guard may propose to suspend, they are required to send that information on to the proper authorities at the Air Force to get their take on it before they take any further actions like firing the person. In this particular case, they didn't even send the information, notice of their action, to the Air Force for about six months. And they held Mr. Lawrence out in limbo, terminated him from the civilian job. And then only after he complained about the action did they send the file up to the Air Force security personnel. The Air Force security personnel looked at it, and ultimately, on August 9, 1999, they issued a letter saying, we have reviewed the personnel security case file pertaining to Subject Lawrence in accordance with the references, and have made a favorable determination in his behalf. Please inform him of this determination as soon as possible. The recommendation to revoke security clearance eligibility was considered. However, based upon an evaluation of all available information, we have determined revocation is not warranted at this time. Therefore, Sentinel Key has been updated to reflect eligibility for key SBI security clearance. Basically, we're saying that the military does have a broad area of discretion with regard to security clearances. However, they are still required to follow their own rules and regulations when they do so. And when they do not do so in a blatant manner, then they have placed themselves outside of the discretionary actions, the umbrella they have, and they too are liable for violating the law just like anyone else. And in this particular case, their exception to Title VII has been voided by their refusal to obey the Air Force's own security regulations in attempting to have Mr. Lawrence's career terminated. Actually, it was terminated. However, we feel that the manner in which the Hawaii Air National Guard violated Mr. Lawrence's rights, being clearly a violation of the Air Force's own rules, is a matter that the court should look to. Indeed, in Stevens v. Perry, 101F3rd 925, the Third Circuit indicated that several courts of appeal have held that the federal courts have jurisdiction to review constitutional claims arising from the clearance revocation process. And they cite Webster v. Dole 486 U.S. 592, Dorfman v. Brown 913F2nd 1399, Jamil v. Secretary Department of Defense 910F2nd 1203, Doves v. CIA 866F2nd 1114, and there are numerous others. Basically, the court has the jurisdiction to determine whether or not the Hawaii Air National Guard complied with its own rules and the Air Force rules in determining to remove Mr. Lawrence's security clearance and removing Mr. Lawrence from his civilian, arguably dual-capacity job. And I guess I'll reserve the rest of my time for... You certainly may do that. We'll hear from the closing counsel. Thank you, Your Honor, and good morning. May it please the Court, I'm Jeffrey Clare, Justice Department Counsel for the Federal Appellees. With the Court's permission this morning, I am joined at council table by counsel for the State Attorney General's Office. I'd like to take 15 minutes for the Federal Government and not leave the balance of the time for the State Counsel. Your Honors, there are two reasons why these claims are not properly cognizable by the Court. Firstly, they implicate considerations of military discipline and functioning that the Courts have held in a number of contexts are simply not justiciable, including under Title VII. And secondly, the plaintiff failed to exhaust the special intramilitary remedies that have been provided for him and people in his situation. Let me turn to the exhaustion question first because it has been the subject of some questioning before the Court. In the supplemental record, excerpts of record at page 122 and page 129, there's an explanation as to why the military did not fully consider the complaint that had been submitted. As is often the case in employment discrimination contexts, the intramilitary remedies require that before a formal complaint is filed and accepted for disposition, there be a kind of in-depth discussion of the nature of the allegations. The complainant is required to meet with someone who can sort through which allegations properly sound against the military, help which allegations can be properly framed as a complaint of discrimination, and aid the complainant in formulating a formal complaint. And the pages of the record that I've cited the Court to are the Hawaii National Guard EEO people explaining that this is a requirement, explaining to the complainant that this is a requirement before a formal complaint is filed. They allow a certain amount of time for the complainant to come in and discuss these allegations with an EEO person and formulate a complaint. They extend the time at one point past the original deadline. And then when that step was not completed, then the complaint was dismissed. Counsel, what is your response to the argument from Mr. Wooten that, in fact, a notice of right to sue was ultimately issued, which suggests that some kind of final decision was made? Because the complaint was dismissed, there is with that dismissal a right to challenge the dismissal. It's not properly a right to sue. And the right and the avenue of review for that and other types of administrative dispositions that occur at an initial administrative level is an appeal first through the highest appropriate level of the State National Guard. And then if no satisfactory resolution is achieved there, up through the National Guard Bureau. So you think that's what he's referring to as the dismissal letter? I believe that's what he's referring to. Does he have a right to go to the EEOC? No. There is, at the back of our red brief, there are a set of National Guard Bureau regulations that deal with the appellate review process. The appellate review, Your Honor, is not to the EEOC. It is rather to the National Guard Bureau. And I'd refer the Court to page 13, and I'm referring to the pagination of the last addendum to the government's brief. Paragraph 2-9 on page 13 speaks to review by the National Guard Bureau, and it says, review by the National Guard Bureau will be conducted when a complaint is dismissed on the whole or part, and the complainant disagrees with the dismissal. That was the avenue of review. So the complaint could go at that juncture up through the National Guard Bureau, and then after a final decision there, there would be an opportunity for review before the appropriate Board of Correctional and Military Records, but not the EEOC. I'm a little confused, then. The Chavez affidavit refers to failure to exhaust remedies with the EEOC. Is that in regard to the, what I would call the coordinate civilian position? Is that what it's referred to? I think perhaps there was some misconception as to where the right of appeal would go there. But the EEOC, bear in mind, these are National Guard technicians. There are people who serve an analogous role in a purely civilian kind of capacity. That's not true of this plaintiff, but for people who are serving in a civilian kind of capacity, then the right of review would go through the EEOC. But for people who have a dual civilian and military capacity, like the plaintiff here, it's the intramilitary system that applies, not Title VII. Title VII does not apply. This is the court's holding in the Muir case, M-I-E-R, that we've cited in our briefs. Title VII does not apply, as the court has held, to conduct, quote, integrally related to the military's unique structure. And that brings me to the second point of our attention as to why these claims are not cognizable. In addition to the failure to exhaust administrative remedies, these claims all implicate military conduct that, for a number of reasons, is generally outside the purview of a court. And in our brief, we've gone case by case and claim by claim, identifying the type of conduct that is related to the military function and citing cases that have held that such conduct is not, in fact, judicially cognizable. Let me start with the suspension of the plaintiff's security clearance. The court has held in the Brazil case that a civilian employee of the Navy, holding something the court deemed in a footnote to be equivalent to a security clearance decision, when that was withheld, the court said that that claim, that there had been discrimination in the termination of that special status, was not cognizable under Title VII. And the court cited to the Eden case in particular, which holds that decisions as to who should have access to this type of highly sensitive information are committed to the discretion of the executive branch and not judicially reviewable. Now, in response, Mr. Whitten cited, among other cases, a Supreme Court case, Webster v. Doe, which recognized that in some context, constitutional claims seeking a kind of declaratory or injunctive relief against the government with respect to rules that govern who may have access to this kind of sensitive information are not necessarily precluded. There is, however, no constitutional claim here. This is a Title VII claim that's been asserted. Moreover, this is not a challenge, as I understand it, from the complaint to an allegation that there is a regulation or a policy that conflicts with an established constitutional right. This is a claim for damages arising out of an individualized determination that an individual's access to sensitive top-secret information had to be suspended. So it would be our contention that this exception in Webster v. Doe, dealing with the cognizability of claims that challenge on a constitutional basis the rules for granting access to information, has no application to the claims that have been asserted here. The other types of claims that have been asserted have also been held to be non-cognizable in a number of contexts. The Muir case deals with whether a Title VII claim challenging the denial of promotion could be cognizable. The court held that they are not cognizable. It similarly dealt with claims that there was some sort of bias in the way an individual's fitness for duty was investigated. It held that those claims are not cognizable, and it held that discharge decisions, decisions governing who should be in the military, what the standards for allowing someone to continue into service or to be admitted into service, those claims are not cognizable. The only remaining contention here is that the sort of hostile work environment claim that the military people allowed a certain racially offensive and hostile environment to persist and that it was discrimination not to take certain remedial action. Those claims in the Courts' Mulnau case, as well as the Stauber case, though not Title VII cases, there were claims for damages under other theories with respect to similar sorts of conduct. Those claims, too, were held to be not judicially cognizable. The unifying theme for all these contentions is that the courts have recognized in a variety of contexts that decisions as to how to discipline military people who should be in the military service are by almost constitutional definition committed to the executive branch and not properly subject of judicial review. This does not mean that discrimination with the military is to be tolerated. It rather means that the remedy for such discrimination is not through suit in court, but rather through the inter-military remedies that Congress has provided. Your Honor, if there are no further questions, I'd like to reserve the balance of my time for Mr. Neveda from the State Attorney General's Office, who can speak to, I believe, the Eleventh Amendment. It appears we don't have any further questions for you, so we'll hear from Mr. Neveda. May it please the Court, Nelson Neveda for the Hawaii Air National Guard and General Correa in his official capacity. The Court had some questions initially for Mr. Lawrence's counsel concerning the exhaustion of intra-service remedies, as the Court should under the Mendez test. In the examination of the records, as the Court noted, there was no right to sue issued by the Hawaii Air National Guard. In fact, the records indicate that all of the procedures, the intra-service procedures stopped at the Commanding General. There was no appeal of the Commanding General's decision to dismiss the complaint to the National Guard Bureau or to the EEOC, as the Court indicated. Also, there's no indication that the appellant, Mr. Lawrence, had tried to appeal his discharge from service to the, for example, to the Board of Correction of Military Records. So in this case, Mr. Lawrence fails to go past the first prong of the test on the Mendez, but even if there was some sort of exhaustion of administrative remedies, this is not the type of case that a civilian court can review in terms of a constitutional claim. Under Knutson v. Wisconsin Air National Guard, a officer was relieved from his command of a civil engineering unit. He, just like Mr. Lawrence, tried to come in with some sort of prospective injunctive relief under 1983, and the Court indicated that this is not the type of test, not the type of case to undo a military decision. Courts, civilian courts, review for constitutional purposes broad claims for general types of regulations to see if they constitute a violation of constitutional rights, but not specific military decisions, as in this case. Does the Court have any particular concerns with regard to this area? No, I don't believe we do. Thank you very much. Thank you. We have some rebuttal time remaining. Your Honor, we do indeed seriously and strenuously urge that Mr. Lawrence's constitutional rights were violated, insofar as the Hawaii Air National Guard refused to follow its own security regulations as mandated by the Air Force Security Review Board, which ultimately did reverse the Hawaii Air National Guard's decision to suspend and or terminate Captain Lawrence's security clearance. Had the Hawaii Air National Guard followed their procedures and immediately notified the Air Force security personnel what they were doing, rather than waited six months to do so, Captain Lawrence would have been cleared so much faster and easier and would not have suffered the ultimate loss of his job and loss of his reputation that the defendants intentionally but wrongfully imposed upon him. If you're claiming now that you've got a constitutional rights violation, that would be a due process violation, then what's your cause of action based on? Your claims under 1981, 1982, 1983, whatever it was, 1985, 1986, were all dismissed because Title VII was your exclusive remedy. Can you bring a due process challenge under a Title VII claim? I believe you can. Insofar as a violation of due process, if it can be shown and if it can be proven, is certainly a violation of Title VII and an indication of racial discrimination in a particular case. So are you alleging then that the due process violation was committed to Captain Lawrence because of his race? Yes, sir. But for his race, his due process rights would not have been treated in that way. Yes, sir. Our argument basically is that the command of the Hawaii Air National Guard wanted to get rid of Captain Lawrence because of his race and determined that it would be easiest to do so by alleging some kind of spurious security violation because the law, as it relates to security violations, gives them such almost unfettered discretion. However, that discretion is limited by a due process requirement that they must follow their own rules and regulations when they do so. And in this case, they did not, as the Air Force itself has indicated in their letter, August 9, 1999, wherein they reinstated Captain Lawrence's security clearance. So even though he got reinstated, you have a surviving due process claim even though counsel has argued that your only remedy was go through the process, which, in fact, you got the remedy you asked for, reinstated. Yes, sir. And there's a surviving due process claim above that. Yes, sir. Thank you. Thank you, counsel. We appreciate the arguments of all of the parties. And the case just argued is subpoenaed for decision.
judges: Brunetti, Graber, Bybee